13 CIV 1917

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| BERNARDUS HENRICUS FUNNEKOTTER, HERMANNES VAN DUREN, JR., MARGARETA VAN DUREN, DICKY ROELANDA BREYTENBACH, ROMELIA GWENDOLYN FISHER, MAX WILLEM ARTHUR GRAAF VAN RECHTEREN L IMPURG, ROLF JAN PHILIP WALRAVEN, WESSEL JOHANNES WELLER, LOEKIE WELLER, JOHAN PIETER WELLER, LION HELLMUT BENJAMINS, CAREL FREDERIK DES TOMBE and ERICA HANSEN, | Case No.: 13 Civ 2 |
| Plaintiffs, | ECF CASE |
| -against- | |
| AGRICULTURAL DEVELOPMENT BANK OF ZIMBABWE, MINERALS MARKETING CORPORATION OF ZIMBABWE, ZB BANK LIMITED, ZIMBABWE MINING DEVELOPMENT CORPORATION, ZIMRE HOLDINGS LIMITED and REPUBLIC OF ZIMBABWE, | **COMPLAINT** |
| Defendants. | |

Plaintiffs, BERNARDUS HENRICUS FUNNEKOTTER, HERMANNES

VAN DUREN, JR., MARGARETA VAN DUREN, DICKY ROELANDA

BREYTENBACH, ROMELIA GWENDOLYN FISHER, MAX WILLEM ARTHUR

GRAAF VAN RECHTEREN L IMPURG, ROLF JAN PHILIP WALRAVEN, WESSEL

JOHANNES WELLER, LOEKIE WELLER, JOHAN PIETER WELLER, LION

HELLMUT BENJAMINS, CAREL FREDERIK DES TOMBE, and ERICA HANSEN

(collectively, "Plaintiffs"), by their undersigned attorneys, as and for their Complaint

against defendants allege as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs are judgment creditors of defendant Republic of

Zimbabwe ("Zimbabwe") in the amount of $ 25,170,171.33, plus interest.  Funnekotter,

et al. v. Republic of Zimbabwe, 09 Civ. 8168 (CM) (S.D.N.Y.).  Plaintiffs' judgment (the "Judgment") resulted from this Court's confirmation of an arbitration award (the "Award") in Plaintiffs' favor from the International Centre for Settlement of Investment Disutes ("ICSID"), which, in turn, resulted from Zimbabwe's unlawful expropriation of Plaintiffs' property in Zimbabwe in violation of a bilateral investment treaty between the Netherlands and Zimbabwe.  Zimbabwe has refused to pay the Judgment and failed to appear in enforcement proceedings in the United States.

2.      This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to determine and resolve an actual controversy regarding the relationship between Zimbabwe and the defendants other than Zimbabwe (such other defendants, collectively, the "Alter Ego Defendants").

3.      On information and belief, based on extensive published reports, Zimbabwe dominates and controls much of the most valuable commercial activity conducted in Zimbabwe, through alter egos such as the Alter Ego Defendants, which are essentially run by Zimbabwe and its leading politicians and generals, and their henchmen, for their own benefit.  The commercial activity Zimbabwe dominates and controls in this manner includes the mining, banking and investment industries – the commercial industries in which the Alter Ego Defendants are engaged.

4.      On information and belief, Zimbabwe has assets in New York and elsewhere in the United States in the form of debts, tangible property and intangible property, held nominally in the names of the Alter Ego Defendants, all of which are engaged in commercial activities in the United States, and which are available to satisfy, at least in part, Plaintiffs' outstanding Judgment against Zimbabwe pursuant to N.Y.

C.P.L.R. § 5201. This property belongs to Zimbabwe because Zimbabwe dominates and controls the Alter Ego Defendants, as more fully set forth below, to such an extent that defendants are Zimbabwe's alter egos. The Alter Ego Defendants' status as Zimbabwe's alter egos renders their assets open to attachment and execution to satisfy the debt Zimbabwe owes to Plaintiffs.

       5.     As more fully set forth below, Zimbabwe's dominance over the Alter Ego Defendants is wide-ranging, extending throughout the Alter Ego Defendants' activities, and Zimbabwe has displayed a dominating hand in directing the use of the Alter Ego Defendants' assets and profits. Zimbabwe, through its government officials and military officers, dictates how and with whom the Alter Ego Defendants conduct their businesses. Zimbabwe utterly dominates the business, management and day-to-day operations of the Alter Ego Defendants.

       6.     Thus, the assets of the Alter Ego Defendants – like any other commercial assets of Zimbabwe – are available to satisfy Plaintiffs' Judgment. It would be manifestly unjust to give effect to the legal fiction that Zimbabwe and the Alter Ego Defendants are technically separate, especially where Zimbabwe has exploited this fiction in wrongful efforts to avoid paying its creditors. Accordingly, Plaintiffs seek a declaration that each of the Alter Ego Defendants is an alter ego of defendant judgment debtor Zimbabwe, and that their assets should be treated as assets of Zimbabwe for all purposes.

## JURISDICTION AND VENUE

       7.     The Court has subject matter jurisdiction over this matter pursuant to 22 U.S.C. § 1650a(b) and 28 U.S.C. §§ 1330(a), 1605(a)(1), (2) and (6).

8.    This Court has jurisdiction pursuant to 22 U.S.C. § 1650a(b) because this is a proceeding to enforce an award of an arbitral tribunal rendered pursuant to chapter IV of the Convention on the Settlement of Investment Disputes.

9.    The Court also has jurisdiction pursuant to 28 U.S.C. § 1330(a) and §§ 1605(a)(1) and (6) because this is a nonjury civil action with respect to which Zimbabwe and the Alter Ego Defendants, which are both alter egos of Zimbabwe and instrumentalities of Zimbabwe within the meaning of 28 U.S.C. § 1603(b), are not entitled to immunity under 28 U.S.C. §§ 1605-1607 and applicable international agreements, and Zimbabwe has waived its immunity explicitly and by implication by becoming a party to the Convention on the Settlement of Investment Disputes, pursuant to which it agreed to submit to arbitration with Plaintiffs.

10.   This Court also has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1330(a) and 1605(a)(2) because Plaintiffs' claims are based upon commercial activities that Zimbabwe undertakes in the United States through the Alter Ego Defendants as agents for and as the alter egos of Zimbabwe.

11.   This Court has personal jurisdiction over the Alter Ego Defendants and Zimbabwe pursuant to 28 U.S.C. § 1330(b), which extends personal jurisdiction over a foreign state (including its alter egos and instrumentalities) that is not immune from suit and that has been properly served with process pursuant to 28 U.S.C. § 1608(a).

12.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(1) because a substantial number of the events and omissions that gave rise to this action, including the entry of the Judgment, and Zimbabwe's movements of funds through the Alter Ego Defendants, occurred in this District, and, on information and belief, the Alter

Ego Defendants and Zimbabwe maintain assets in New York against which Plaintiffs can enforce their Judgment.

13.    A declaratory judgment declaring the Alter Ego Defendants to be nothing more than the commercial alter egos of judgment debtor Zimbabwe is appropriate pursuant to 28 U.S.C. § 2201 because declaratory relief will resolve a definite and concrete controversy touching on the legal relations of parties having adverse legal interests.

## THE PARTIES

14.    Plaintiffs are citizens of the Netherlands, and are the petitioners and judgment creditors on the Judgment in <u>Funnekotter, et al. v. Republic of Zimbabwe</u>, 09 Civ. 8168 (CM), pending in this Court.

15.    On information and belief, all the Alter Ego Defendants are entities organized under the laws of Zimbabwe.

16.    Defendant AGRICULTURAL DEVELOPMENT BANK OF ZIMBABWE (a.k.a. AGRIBANK; a.k.a. AGRICULTURAL BANK OF ZIMBABWE) ("Agribank"), on information and belief, is a banking corporation 100% owned by Zimbabwe with its head office at Hurudza House, 15th Floor, 14-16 Nelson Mandela Avenue, Harare, Zimbabwe.  Agribank has been designated a Specially Designated National ("SDN") by the Office of Foreign Assets Control ("OFAC") of the United States Department of Treasury, reflecting Agribank's status as an alter ego of Zimbabwe. Agribank is controlled by political appointees and, despite its ostensible status as an agricultural lender, has provided funds on favorable terms to numerous well-connected members of ZANU-PF, the political party of Zimbabwe's President Robert Mugabe

("Mugabe"), who became President maintains power through controversial elections marred by claims of election fraud and intimidation.

17.    On information and belief, Agribank holds assets in the United States used for commercial activity.

18.    Defendant MINERALS MARKETING CORPORATION OF ZIMBABWE (a.k.a. MMCZ) ("MMCZ"), on information and belief, is a corporation 100% owned by Zimbabwe with its head office at 90 Mutare Road, Msasa, Harare, Zimbabwe. MMCZ has been designated as an SDN by OFAC, reflecting MMCZ's status as an alter ego of Zimbabwe. MMCZ is responsible for the marketing of Zimbabwe's mineral wealth other than gold, and its profits go to Zimbabwe. MMCZ is dominated and controlled by Zimbabwe and has no purpose or function other than as an arm of the Mugabe government of Zimbabwe.

19.    On information and belief, MMCZ holds assets in the United States used for commercial activity.

20.    Defendant ZB BANK LIMITED (a.k.a. ZIMBABWE BANKING CORPORATION LIMITED; a.k.a. ZB BANK; a.k.a. ZBCL; a.k.a. ZIMBANK) ("ZB Bank"), on information and belief, is a banking corporation wholly owned by ZB Financial Holdings Limited which, in turn, is majority owned by, and completely controlled by, Zimbabwe. ZB Bank has been designated as an SDN by OFAC, reflecting ZB Bank's status as an alter ego of Zimbabwe. Through their ownership stakes, government ministries appoint directors to ZB Bank's board of directors, and executives of ZB Bank are and have been ZANU-PF politburo members and themselves designated as SDNs by OFAC. On further information and belief, ZB Bank's principal office is

located at ZB Centre, 11th Floor, Corner First Street / Kwame Nkrumah Avenue, Harare, Zimbabwe.

21.    On information and belief, ZB Bank holds assets in the United States used for commercial activity.

22.    Defendant ZIMBABWE MINING DEVELOPMENT CORPORATION (a.k.a. ZIMBABWE MINING DEVELOPMENT CORP.; a.k.a. ZMDC) ("ZMDC"), on information and belief, is a corporation 100% owned by Zimbabwe with its head office at the MMCZ Building, 90 Mutare Road, P.O. Box 4101, Harare, Zimbabwe.  ZMDC has been designated as an SDN by OFAC, reflecting ZMDC's status as an alter ego of Zimbabwe.  ZMDC is controlled by political appointees loyal to ZANU-PF.  While one of ZMDC's ostensible purposes is to provide fiscal support for Zimbabwe, in fact the powerful and politically-connected in Zimbabwe's government dominate and control ZMDC are able to personally profit from ZMDC.

23.    On information and belief, ZMDC holds assets in the United States used for commercial activity.

24.    Defendant ZIMRE HOLDINGS LIMITED (a.k.a. WWW.ZHL.CO.ZW; a.k.a. ZIMRE) ("Zimre"), on information and belief, is an investment and holding company that is 43.23% owned outright by Zimbabwe, with its head office at Zimre Centre, 9th Floor, Cnr. Leopold Takawira/Kwame Nkrumah Avenue, P.O. Box 4839, Harare, Zimbabwe.  The government of Zimbabwe, through its ministers and police, has exercised control over the running of Zimre and its subsidiary companies in a matter inconsistent with its operation as an independent entity and consistent with

Zimbabwe's complete dominion and control over Zimre and its assets. Zimre has been designated as an SDN by OFAC, reflecting Zimre's status as an alter ego of Zimbabwe.

25.    On information and belief, Zimre holds assets in the United States used for commercial activity.

26.    Defendant Zimbabwe is a foreign state as defined under 28 U.S.C. § 1603(a) and is the judgment debtor of Plaintiffs in respect of the Award, as discussed *supra*.

27.    The Alter Ego Defendants, both as agencies and instrumentalities of Zimbabwe and as alter egos of Zimbabwe, individually and collectively are a foreign state as defined under 28 U.S.C. § 1603(a).

## THE ALTER EGO DEFENDANTS ARE SIMPLY COMMERCIAL ALTER EGOS OF DEFENDANT ZIMBABWE

28.    As discussed *supra* in ¶¶ 3-6 and 15-25, each of the Alter Ego Defendants is so subject to the domination and control of Zimbabwe through various Zimbabwean governmental entities, ministers and military officials that they must, for all purposes, be treated as alter egos of Zimbabwe.

29.    Each of the Alter Ego Defendants is also engaged in commercial activity in the United States, and, upon information and belief, possesses money or other property in the United States.

30.    As noted *supra* at ¶ 16, OFAC is a unit of the United States Treasury, which publishes a list of SDNs. The list of SDNs comprises "a list of individuals and ***companies owned or controlled by, or acting for or on behalf of, targeted countries***," as determined by OFAC *See* http://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx (emphasis added).

31.    OFAC has determined that each of the Alter Ego Defendants is an SDN with respect to Zimbabwe.

32.    Therefore, there is *prima facie* evidence that, as determined by a branch of the United States government authorized to make such determinations, that the Alter Ego Defendants are "owned or controlled by, or acting for or on behalf of" Zimbabwe and, as such, alter egos of Zimbabwe.

33.    Further, in an effort to enforce the Award, Plaintiffs sought discovery from defendant Zimbabwe regarding the status of certain of the Alter Ego Defendants, their relationship to Zimbabwe beyond what is available in the public record, and the extent and nature of their property held in the United States.  Plaintiffs served subpoenas on Zimbabwe.  Despite proper service, Zimbabwe failed to respond to Plaintiffs' numerous demands for information.  *See* Memorandum Order and Opinion, 09 CV 8168 (CM) (THK) p. 3, 10 (the "Magistrate's Order").

34.    As a sanction for Zimbabwe's failure to respond in any way to Plaintiffs' discovery requests, the Magistrate's Order precluded Zimbabwe from denying that Alter Ego Defendants Agribank, MMCZ and ZMDC are alter egos of Zimbabwe (the "Sanction").

35.    Plaintiffs are entitled to be made whole for the injuries they have suffered as recognized in the Award and as confirmed in the Judgment.  Defendant judgment debtor Zimbabwe has not only failed to satisfy the Judgment, but has failed to provide Plaintiffs with information Zimbabwe was inarguably required to provide, resulting in the Sanction.

## NECESSITY FOR RELIEF

36.     The entities currently on the OFAC SDN list are subject to statutory and regulatory restrictions on the transfer of money or property as a result of economic sanctions; in common terminology, their assets are frozen. This has the effect both of keeping their assets in the United States and of preventing Plaintiffs from attaching them at this time to satisfy the Judgment.

37.     However, entities may be removed from the SDN list at any time. On information and belief, the Alter Ego Defendants on the SDN list may be removed in the near future.

38.     Defendants are aware of the Award and the Judgment.

39.     There is a grave risk that the Alter Ego Entities, as soon as their assets in the United States are unfrozen, will remove them from the United States as quickly as possible to frustrate execution of Plaintiffs' Judgment.

40.     Plaintiffs seek this declaratory relief to ensure that they are prepared to seek appropriate enforcement of the Judgment immediately if and when the sanctions are lifted. This action will resolve a necessary legal point genuinely in controversy that is antecedent to seeking enforcement of the Judgment, but which requires resolution prior to seeking enforcement of the Judgment.

## AS AND FOR A FIRST CAUSE OF ACTION
## (DECLARATION OF ALTER EGO STATUS)

41.     As demonstrated by the facts alleged above, each of the Alter Ego Defendants is either so subject to the domination and control of Zimbabwe as to be a mere alter ego for the latter, or is designated an SDN by the OFAC creating a presumption of alter ego status, or both.

42.    As alter egos of Zimbabwe, the Alter Ego Defendants are not entitled to be treated as separate juridical entities. The dominion and control by Zimbabwe and its officials and military over the Alter Ego Defendants is so complete that they have no meaningful separate existence, but operate as mere agents of Zimbabwe.

43.    To permit Zimbabwe to rely on the fictitious corporate separateness of the Alter Ego Defendants would be manifestly unjust to Plaintiffs, who are entitled to be compensated for their losses, as recognized in the Award and Judgment. It would further defeat the international policy reflected in the ICSID convention and the bilateral investment treaty between the Netherlands and Zimbabwe, which are intended to provide for the just and orderly determination of disputes like the one between Plaintiffs and Zimbabwe.

44.    Because Plaintiffs and Defendants in this action have directly adverse legal interests, and there is a definite and concrete controversy relating to the legal relations between them, this Court should has the statutory authority to declare the rights and duties of the parties, including the alter ego status of the Alter Ego Defendants and the right of Plaintiffs to execute the Judgment against them should the OFAC sanctions be lifted.

WHEREFORE Plaintiffs respectfully request that this Court:

A) Declare that the Alter Ego Defendants are alter egos of defendant judgment debtor Zimbabwe;

B) Declare that the assets of the Alter Ego Defendants located in the United States should be treated as property of Zimbabwe used for

commercial purposes against which the Judgment may be enforced as and when permitted by law; and

C) Enter judgment for such other and further legal and/or equitable relief as may be just and proper.

Dated: March 21, 2013

MILLER & WRUBEL P.C.

By: _____
Charles R. Jacob III
S. Christopher Provenanzo
570 Lexington Avenue
New York, New York 10022
(212) 336-3500

Attorneys for Plaintiffs